[No. 1190-3.    Division Three.    March 1, 1976.]

BILL ALLSTOT, *Appellant*, v. PACE NATIONAL CORPORATION, ET AL, *Respondents*.

*Kelley & Blinn* and *W. Gordon Kelley*, for appellant.

*Carlson & Drewelow, Inc., P.S.*, and *Larry Carlson*, for respondents.

MUNSON, J.—Bill Allstot, plaintiff, appeals from the trial court's granting of a judgment notwithstanding the verdict or in the alternative, a new trial, in favor of the defendants, Pace National Corporation and Tom Walton. We affirm the granting of a new trial.

Plaintiff processes and packs his own apples, as well as those of other growers. In 1968, he purchased waxing and drying equipment from the defendant; in 1970, he purchased all his chemicals from the defendant. After the 1970 harvest, orchard run apples were brought to the plaintiff in

bins, which held 25 boxes or bushels of apples; while still in the bin the apples were immersed in a solution containing a chemical, diphenylamine (DPA). The immersion was for the purpose of preventing scald, a brownish discoloration of apples occurring while in storage. No one anticipates, however, that the immersion will totally eliminate the possibility of storage scald. The apples were then taken to cold storage to await a more opportune time for packing. The packing process consisted of removing the apples from storage and submerging the bin in water, allowing the apples to float from the bin onto conveyor belts to a machine where they were washed and rinsed. The apples then proceeded to a wax applicator, were dried and went to sorting belts from which they were ultimately sized, graded, packed, and shipped.

Some of plaintiff's buyers complained, upon inspection, that the apples had a bluish-black superficial discoloration to the skin; they rejected the apples. Plaintiff took samples of these apples to the United States Department of Agriculture Research Service at Wenatchee, they were examined by Dr. Charles Pierson, who testified that the discoloration was the result of a chemical injury.

Plaintiff then commenced this action contending the defendants supplied a defective product and the instructions supplied with the product were erroneous.

At the conclusion of the case, the defendants moved to dismiss because: (1) plaintiff had misused the defendants' product DPA in that he had run more apples through the initial immersion containing DPA than the defendants had advised on the container label, *i.e.*, 40,000 bushels, as contrasted to 13,500, which was the maximum that should have been run considering the amount of DPA the plaintiff purchased; (2) while the evidence disclosed discoloration, there was no evidence that condition resulted from a defect in the defendants' product and to submit the matter to the jury would allow it to enter into speculation and conjecture as to the cause of damage; and (3) there was no testimony that the product, DPA, was defective.

The court denied the motion, commenting that plaintiff presented an extremely weak case but that it would submit the matter to the jury, and "if there is an error . . . it could always be corrected." The jury returned a verdict in favor of the plaintiff and awarded him $6,901.06.

On post-trial motion, the court granted defendants a judgment notwithstanding the verdict, finding: (a) the plaintiff did improperly apply the defendants' product contrary to label instructions; (b) no evidence that the defendants' chemical was defective; (c) no evidence that the damage probably resulted from the alleged defective chemical DPA; (d) that defendants' equipment used to apply the wax and dry it was within tolerances in relation to temperature and heat; and (e) Dr. Pierson's testimony as to the causal connection between the chemical and the damage was so qualified that it did not fall within the area of probability, but only within the area of possibility. The court concluded there was no probative evidence as to the causal relationship between the product and the injury.

█ In reviewing the granting of a judgment n.o.v., we are governed by well-known principles:

> Such a motion involves no element of discretion and will not be granted unless the court can say, as a matter of law, that there is neither evidence nor reasonable inference from evidence sufficient to sustain the verdict. In ruling on a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the party against whom the motion is made, and all material evidence favorable to the contention of the party benefited by the verdict must be taken as true. If there is substantial evidence supporting the verdict of the jury, as distinguished from a mere scintilla of evidence, the verdict must stand. By "substantial evidence" is meant that character of evidence which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed.

*Grange v. Finlay*, 58 Wn.2d 528, 529, 364 P.2d 234 (1961); *Englehart v. General Elec. Co.*, 11 Wn. App. 922, 925, 527 P.2d 685 (1974).

Thus, the sole issue is whether plaintiff produced sufficient evidence to allow submission of the case to the jury, *i.e.*, whether the plaintiff had established a causal connection between either the product, DPA, or the defendants' temperature instructions, and the discoloration of the apples.

Dr. Pierson, who had participated in tests preparatory to determining the proper instructions to be contained in the labels of the DPA containers, as well as some of the instructions for the use of the waxing applicator, testified:

> So, by eliminating both scald and heat injury, I arrived at the conclusion that this was a chemical injury of some sort. . . . As to the exact cause, I just couldn't say. I said that it was associated with the DPA treatment. . . . Well, I think what I said was that there was a causal relationship between the use of DPA and the incidence of the disorder. . . . Here we have lots of fruit that was treated with a chemical. We also had lots of fruit that was not treated with the chemical, but were given the same treatment subsequently. Only the lots of fruit that were treated with the chemical developed the disorder. So, we would say that this is a causal relationship. That is, there is a relationship between the use of the material and the incidence of the disorder, so that there is a relationship between the cause of the disorder and the use of the chemical.[1]

The plaintiff testified that pursuant to Dr. Pierson's suggestion, he reduced the temperatures in both the rinse and the drier, and no further complaints of discoloration. were received.

█ A verdict cannot be founded on mere theory, speculation, or conjecture. Evidence need not be direct; it may be

---

[1]Dr. Pierson admitted on cross-examination there were other things that could have caused this injury, *i.e.*, ammonia escaping while the apples were in storage; injuries from sodium orthophenylphenate or SOPP, stop-mold; also, there can be chemicals which may come in contact with the fruit accidentally. There is no evidence, however, that any of these things occurred to plaintiff's apples. While there was testimony that such a condition might evolve during the growing process and be a chemical reaction to something that occurred once the fruit came into the plaintiff's hands; there is no evidence that such ever occurred.

circumstantial, from which reasonable inferences may be drawn. A verdict based upon such inferences does not rest on speculation or conjecture. *Lamphiear v. Skagit Corp.*, 6 Wn. App. 350, 493 P.2d 1018 (1972).

There was evidence that when plaintiff followed the recommended temperature ranges as set forth in exhibit No. 1, discoloration occurred; but when the plaintiff reduced those temperatures, no discoloration took place. This evidence provides a legitimate inference that the recommended temperature settings were in error, causing discoloration resulting in plaintiff's damage. Thus, the court erred in granting the judgment n.o.v.

■ The trial court granted defendants' motion for a new trial should the judgment n.o.v. be reversed on appeal; granting of the motion for new trial was based in part on the fact that there was no evidence the defendants' chemical was defective. The jury had been instructed, however:

> Plaintiff further alleges that upon following these instructions certain portions of his fruit incurred a condition known as "scald" and that such condition resulted from either *improper instructions or improper materials* furnished by the defendants and plaintiff's reliance upon the superior knowledge of the defendant.

(Italics ours.) This is the only instruction advising the jury of the issues which it was to consider and resolve. There was no evidence of a defective or improper material, *i.e.*, DPA. No tests were conducted on the DPA; Dr. Pierson's testimony eliminated heat and scald as causes; but his conclusion that the injury was associated with DPA is not supported. That issue should not have been submitted, and its inclusion within the instructions is reversible error.

The judgment n.o.v. is reversed; the order granting new trial is affirmed and the case remanded for new trial.

McINTURFF, C.J., and GREEN, J., concur.